```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

UNITED STATES,
                                              MEMORANDUM & ORDER
                                              20-CR-141-2 (KAM) (RML)
        - against -


JING TAO MEI,

                Defendant.

-------------------------------------X
```

KIYO A. MATSUMOTO, United States District Judge:

  Defendant Jing Tao Mei petitions for a writ of error *coram nobis*, claiming that his counsel failed to advise him of the immigration consequences of pleading guilty. For the reasons set forth below, the motion is respectfully denied.

## BACKGROUND

  On September 28, 2020, Defendant pleaded guilty pursuant to a plea agreement to a one-count information charging him with possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841. (9/28/20 Minute Entry.) In the plea agreement, Defendant "affirmed that [he] want[ed] to plead guilty regardless of any immigration consequences that [his] plea may entail." (ECF No. 96-1 ("Plea Agreement") ¶ 12.) The court thoroughly reviewed the consequences of Defendant's guilty plea before accepting Defendant's plea. In particular, after confirming that Defendant's counsel had discussed the immigration consequences of

the plea with his client, the court personally advised Defendant that "it is likely that you are going to face removal proceedings if you do decide to proceed with your guilty plea." (ECF No. 90-2 ("Plea Tr.") at 6.) Defendant confirmed that he understood. (*Id.*) The court continued: "So, in other words, you will be removed from the United States." (*Id.* at 7.) Again, Defendant confirmed that he understood. (*Id.*) Later in the proceeding, the court reviewed the plea agreement with Defendant and again advised him that "the Government is almost certainly going to remove you from eligibility [to] hav[e] a green card and will seek your removal from the United States." (*Id.* at 17.) For a third time, Defendant confirmed that he understood. (*Id.*)

On July 28, 2021, the court sentenced Defendant to five months of incarceration and three years of supervised release with special conditions. (ECF No. 83.) Before sentencing Defendant, the court again confirmed that counsel had discussed the immigration consequences of his plea with his client. (ECF No. 90-3 ("Sentencing Tr.") at 6.) The court also personally advised Defendant "that he would likely have to be removed from the United States as a result of his conviction." (*Id.*)

On February 25, 2022, Defendant completed his term of imprisonment and was transferred to the custody of Immigration and Customs Enforcement. (*See* ECF No. 90-1 ("Def.'s Mem.") at 4; ECF No. 96 ("Gov't's Opp'n") at 5.) On May 5, 2022, Defendant filed

the instant motion seeking *coram nobis* relief based on his counsel's alleged failure to advise him of the immigration consequences of pleading guilty. (ECF No. 90.) Defendant's final removal hearing in Immigration Court is scheduled for July 7, 2022. (*See* ECF No. 91.)

## DISCUSSION

"A petitioner seeking *coram nobis* relief 'must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)). Although "ineffective assistance of counsel is one ground for granting a writ of *coram nobis*," *id.* the court concludes that Defendant has failed to establish ineffective assistance of counsel and that Defendant's motion is untimely.

"As a predicate matter, a petitioner alleging ineffective assistance based on immigration misadvice must clearly demonstrate that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty." *Doe v. United States*, 915 F.3d 905, 911-12 (2d Cir. 2019) (alteration original; quotations and citation omitted). "Courts cannot rely solely on *post hoc* assertions from a defendant about how he would

3

have pleaded but for his attorney's deficiencies," but rather must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 912 (quotations and citation omitted); *see also, e.g.*, *United States v. Herrera-Cleto*, 836 F. App'x 62, 64 (2d Cir. 2020) (finding petitioner's *post hoc* affidavit insufficient to demonstrate prejudice). Here, Defendant offers only a *post hoc* assertion that he would have insisted on trying to negotiate a plea without immigration consequences or would have insisted on going to trial. (ECF No. 92 ("Mei Affidavit") ¶ 11.) Neither Defendant's brief, nor the court's independent review of the record, provides any contemporaneous evidence that Defendant placed particular emphasis on immigration consequences when deciding to plead guilty. *See Doe*, 915 F.3d at 911-12. Rather, the contemporaneous record reflects that – notwithstanding Defendant's repeated acknowledgements of the immigration consequences – Defendant elected to plead guilty to a single count, with a maximum term of imprisonment of five years and with credit for acceptance of responsibility, based on his possession with intent to distribute approximately 700 pounds of marijuana. (Sentencing Tr. at 31; ECF No. 56 ("PSR") ¶¶ 4-5.)

Moreover, even assuming Defendant could show that counsel's performance was deficient, the court finds that Defendant has failed to show prejudice. *See Kovacs*, 744 F.3d at 52 ("[A] defense lawyer's incorrect advice about the immigration

4

consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense.") Defendant presents no evidence that he could have successfully negotiated a plea without immigration consequences or that he had an available defense to litigate at trial. *See id.; see also, e.g.*, *Thomas v. United States*, 2020 WL 3428148, at *5 (S.D.N.Y. June 23, 2020) (denying *coram nobis* relief where defendant offered only "conjecture" to support his claim of a plea without immigration consequences and failed to demonstrate the existence of a "non-frivolous defense available at trial").

Here, the record demonstrates that Defendant was provided with ample warning of immigration consequences prior to his plea. Courts in this circuit have consistently concluded that adequate warnings of immigration consequences contained in a plea agreement or given during a plea colloquy "remedy any potential prejudice from allegedly erroneous information provided by [counsel]." *Chung Yu-Holguin v. United States*, 2020 WL 804945, at *11 (E.D.N.Y. Feb. 18, 2020); *see also, e.g.*, *United States v. Rodriguez-Hilario*, 699 F. App'x 30, 31 (2d Cir. 2017) (affirming denial of *coram nobis* relief where court and plea agreement warned petitioner of immigration consequences); *Cambell v. United States*, 2019 WL 356904, at *6 (E.D.N.Y. Jan. 29, 2019) ("[W]hen a defendant

5

learns of the deportation consequences of his plea from a source other than his attorney, he is unable to satisfy *Strickland*'s second prong because he has not suffered prejudice." (citation omitted)); *Chowdhary v. United States*, 2015 WL 273728, at *7 (S.D.N.Y. Jan. 22, 2015) ("Courts in this Circuit routinely hold that a defendant fails to satisfy the prejudice prong of *Strickland* where his attorney fails to inform him of the potential for deportation but the deportation consequences are otherwise addressed in the plea agreement or allocution." (quotations and citation omitted)).  Accordingly, the court concludes that Defendant has failed to show prejudice from counsel's alleged failure to adequately advise him of the immigration consequences of his plea.

Finally, the court concludes that Defendant has failed to show that "sound reasons exist for failure to seek appropriate earlier relief."  *Kovacs*, 744 F.3d at 49 (citation omitted). Defendant claims – without evidentiary support – that he did not learn of the immigration consequences of his conviction until he was transferred to immigration custody on February 25, 2022. (Def.'s Mem. at 10.)[1]  As detailed above, Defendant's claim of

---

[1] Notably, Defendant's affidavit does not address when he learned of the immigration consequences of his plea, stating only that he "was not worried about being deported" based on his conversations with defense counsel, and that defense counsel failed to inform him that the conviction would result in "mandatory deportation with virtually no option to avoid deportation."  (Mei Affidavit ¶¶ 7-8.)

ignorance is belied by the record because he was repeatedly advised – at a minimum, in the plea agreement[2] and by the court – that his conviction would or was very likely to result in deportation. (*See, e.g.*, Plea Tr. at 7 ("[Y]ou will be removed from the United States."); *id.* at 18 ("[T]he Government is almost certainly going to remove you from eligibility [to] hav[e] a green card and will seek your removal from the United States.").) In addition, Defendant was served with a notice to appear for immigration proceedings on February 14, 2022 – prior to being transferred to immigration custody. (Def.'s Mem., Ex. A, at 2.)

Nevertheless, even assuming that he did not become aware of the immigration consequences of his conviction until February 25, 2022, Defendant did not file his motion until more than two months later, on May 5, 2022. Defendant's only explanation for this delay is that "it takes some time to obtain the records and transcripts necessary to file a petition." (Def.'s Mem. at 10.) The transcripts of the plea hearing and sentencing, however, were finalized prior to Defendant being transferred to immigration custody. (*See* Plea Tr. at 28 (July 27, 2021); Sentencing Tr. at

---

[2] Defendant claims that the plea agreement was "confusing" because it referred to naturalization and Defendant was a green-card holder rather than a naturalized citizen. (Def.'s Mem. at 9.) Although the plea agreement did refer to naturalization, Defendant more broadly affirmed in the plea agreement that he wished to plead guilty "regardless of *any* immigration consequences." (Plea Agreement ¶ 12 (emphasis added).) In addition, the court dispelled any confusion during the plea hearing. (Plea. Tr. at 17 ("It says denaturalization, but [Defendant] said he has a green card. So . . . basically the Government is almost certainly going to remove you from eligibility [to] hav[e] a green card and will seek your removal from the United States.").)

7

43 (Feb. 4, 2022).) Similarly, all of the other documents relied upon in the petition to support Defendant's claim of ineffective assistance are dated prior to May 2022. (*See* Def.'s Mem., Exs. C-E, G; Mei Affidavit.) In fact, the court's review of the record suggests that Defendant waited until the last possible moment – *i.e.*, when Defendant's final removal hearing was scheduled for July 7, 2022 – to seek expedited relief before this court. (Def.'s Mem., Ex. F.) Accordingly, the court concludes that *coram nobis* relief is not warranted because Defendant has failed to show sound reasons for the more than a year-and-a-half delay between pleading guilty on September 28, 2020 and filing the instant motion on May 5, 2022. *See, e.g.*, *Lazreg v. United States*, 2019 WL 3412109, at *3 (E.D.N.Y. July 26, 2019) (finding a "two-year delay in seeking coram nobis relief to be unjustifiable"); *United States v. Siwek*, 2018 WL 3404144, at *5 (D. Conn. July 12, 2018) (same, for delay of more than a year-and-a-half).

## CONCLUSION

For the foregoing reasons, Defendant's petition for *coram nobis* relief is respectfully DENIED.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated: Brooklyn, New York
July 5, 2022